UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br>    vs.<br><br>ANTHONY LEWIS HAMELIN,<br><br>            Defendant. | Case No.: 2:23-cr-00111-GMN-DJA<br><br>**ORDER DENYING MOTION TO WITHDRAW PLEA** |

      Pending before the Court is Defendant Anthony Hamelin's Motion to Withdraw Guilty Plea, (ECF No. 51). Plaintiff United State of America filed a Response, (ECF No. 54), to which the Defendant filed a Reply, (ECF No. 57). Due to Defendant's failure to meet his burden of providing a fair and just reason to withdraw his plea, the Court **DENIES** Defendant's Motion to Withdraw Guilty Plea.

**I.    BACKGROUND**

      On June 13, 2023, a grand jury issued an Indictment charging Defendant with one count of influencing, impeding, or retaliating against a federal official by threatening a family member in violation of 18 U.S.C. § 115(a)(1)(A) and one count of transmitting a communication containing a threat to injure in violation of 18 U.S.C. § 875(c). (*See* Indictment, ECF No. 10). Four months later, Defendant filed a Notice of Insanity Defense, (ECF No. 17). The Notice included a report from Dr. Piasecki, M.D., who had evaluated Defendant, described his history of mental illness, and concluded that he appeared to meet the criteria for insanity at the time of his alleged crime but was competent to proceed at the time of her assessment. (Report, Ex. A to Not. Insanity Defense, ECF No. 17-1). The government moved to have Defendant evaluated pursuant to Fed. R. Crim. P. 12(c)(1)(B), and Defendant did not oppose,

1  so the Court ordered that he be evaluated and transported to a suitable Bureau of Prisons
2  ("BOP") facility. (Order Granting Mot. Eval., ECF No. 30).  Defendant was never transferred
3  to the BOP, primarily because the parties stipulated to stay the Court's transfer order while they
4  attempted to negotiate a resolution. (Order Granting Stip., ECF No. 34).
5       On March 11, 2024, pursuant to a plea agreement, Defendant pled guilty to both counts
6  charged in the indictment. (Mins. Change Plea, ECF No. 39).  However, when Defendant came
7  before the Court for sentencing on June 10, 2024, the Court shared four letters with counsel that
8  Defendant had sent directly to the Court while defense counsel was on vacation.  These letters
9  contained assertions that he did not plead guilty voluntarily because of the state of his mental
10 health. (*See generally* Letters, ECF Nos. 47–50).  He stated that he was under "mental
11 pressure," situational stress, was depressed, and was not thinking clearly when he pled guilty.
12 (Second Letter at 1, ECF No. 48); (Fourth Letter at 1, ECF No. 50).  Defendant claimed to have
13 pled guilty because he was frustrated at being held at Pahrump instead of being transferred to
14 the BOP. (Fourth Letter at 1).  Defendant wrote that he was still guilty of transmitting a
15 communication containing a threat to injure, but not influencing, impeding, or retaliating
16 against a federal official by threatening a family member. (Third Letter at 1, ECF No. 49).
17      Based on these letters, and the assertions made by Defendant, the Court continued
18 Defendant's sentencing to allow him to consult with counsel about withdrawing his guilty plea.
19 (Mins. Sentencing, ECF No. 46).  The very next day on June 11, 2024, Defendant filed the
20 instant Motion to Withdraw Guilty Plea, which the Court discusses below.  Almost one month
21 later, Defendant obtained a psychiatric evaluation regarding the voluntariness of his guilty plea.
22 **II.    LEGAL STANDARD**
23      A district court may permit withdrawal of a guilty plea prior to sentencing upon a
24 showing by the defendant of any "fair and just reason," which is a standard that is liberally
25 applied. Fed. R. Crim. Proc. 11(d)(2); *United States v. Ortega-Asciano*, 376 F.3d 879, 883 (9th

Cir. 2004); *United States v. Nagra*, 147 F.3d 875, 880 (9th Cir. 1998). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Ortega-Asciano*, 376 F.3d at 883. The district court must vacate a guilty plea that was "unfairly obtained or given through ignorance, fear or inadvertence." *United States v. Rubalcaba*, 811 F.2d 491, 493 (9th Cir. 1987) (quoting *Kercheval v. United States*, 274 U.S. 220, 224 (1927)). The defendant has the burden of establishing a fair and just reason for withdrawal. *See* Fed. R. Crim. Proc. 11(d)(2)(B). A defendant may not withdraw his guilty plea "simply on a lark." *United States v. Hyde*, 520 U.S. 670, 676–77 (1997). Rather, the district court must review each case in the context in which the motion to withdraw guilty plea arose to determine whether a fair and just reason exists. *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008).

When the record reflects that the defendant's plea was knowing and voluntary, and made with full understanding that the court was not bound by any sentencing agreement, the district court does not abuse its discretion in refusing to allow withdrawal of the plea. *United States v. Garcia*, 909 F.2d 1346, 1349 (9th Cir. 1990). "Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea." *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008). Thus, the Court need not grant any request to withdraw when the reasons given contradict statements made during the plea colloquy. *United States v. Castello*, 724 F.2d 814, 815 (9th Cir. 1984). This allows the court to deny a request to withdraw when the defendant has simply changed his mind. *Garcia*, 909 F.2d at 1348.

### III. **DISCUSSION**

Defendant wishes to withdraw his guilty plea because he was experiencing a mental health crisis at the time he entered his plea. (Mot. Withdraw Plea 3:15–20). A defendant is not

competent to stand trial or "to waive constitutional rights if mental illness has substantially impaired his or her ability to make a reasoned choice among the alternatives presented and to understand the nature and consequences of the waiver." *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981).  However, the fact that a criminal defendant suffers from depression, stress or anxiety will not necessarily render him incapable of knowingly and voluntarily pleading guilty. *Tanner v. McDaniel*, 493 F.3d 1135, 1145–46 (9th Cir. 2007) (rejecting claim that petitioner's depression rendered his guilty plea involuntary where plea hearing record indicated that petitioner "lucidly and voluntarily decided to plead guilty").  A defendant's mental anguish will render his plea involuntary only if it caused him to be "unable to make the decision to plead guilty freely and intelligently." *Id.*  "[D]epression alone is very unlikely to render a plea involuntary." *Id.* (citing *Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995) ("Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that Petitioner's plea was involuntary.").

In this case, Defendant obtained a second evaluation from Dr. Piasecki on July 5, 2024, to determine whether his guilty plea was voluntary. (*See* July Evaluation, Ex. A to Reply to Mot. Withdraw Plea, ECF No. 57-1).  This time, Dr. Piasecki concluded that Defendant's plea was not voluntary because his decision-making was "compromised." (*Id.* at 3).  She explained that his guilty plea was influenced by several factors, including that he felt depressed and hopeless after waiting for a transfer to BOP, and that he struggled to manage his mental health at the Nevada Southern Detention Center because there was no mental health programming, group activities, or exercise yard where he could walk. (*Id.* at 2).  He reported that the facility was overcrowded, loud, and making him irritable and depressed. (*Id.* at 3).  At the same time, he felt a sense of urgency because the only supportive person in his family, his cousin, had

cancer that was getting progressively worse. (*Id.* at 2). With all this in mind, he felt pressured to plead guilty so that he could get to a different facility. (*Id.*)

Nevertheless, even though Defendant was suffering from depression, anxiety about his cousin's cancer, and a feeling of hopelessness about the conditions of his confinement, he was lucid and actively participating in his plea hearing. Throughout the plea colloquy on March 11, 2023, he engaged with the Court, his counsel, and was responsive to questions. Defendant confirmed that he understood the elements of the charges brought against him, and that the Government must prove them beyond a reasonable doubt. (Plea Hearing Audio at 2:00–3:45, Ex. 1 to Resp., ECF No. 54-1). The Court then engaged in a series of questions with Defendant to ensure he was competent. When the Court asked Defendant about medications, he stated that he had been taking three prescribed antipsychotic medications and confirmed that he had no confusion or dizziness and was aware of what was going on. (*Id.* at 4:20–5:30). Defense counsel told the court that she believed Defendant was competent to plead guilty. (*Id.* at 6:10–6:20). Defendant confirmed that he understood the terms of the plea, would not seek to withdraw the plea, and comprehended both his trial rights and the consequences of pleading guilty. (*Id.* at 6:19–17:20). He also stated that he had sufficient time to discuss the plea agreement with his attorney, and that she answered all his questions. (*Id.* at 8:45–9:30). After he confirmed the facts contained in the plea agreement, the Court accepted his guilty plea and found it was entered knowingly and voluntarily. (*Id.* at 18:00–20:50).

Additionally, Defendant was lucid during his June 10, 2024 hearing, and told the Court multiple times that he did not wish to withdraw his guilty plea. This was after the four letters had been sent to the court. At the June 10 hearing, Defendant's counsel relayed to the Court that Defendant wrote letters to the Court because he was "spiraling" and not able to reach his her while she was on vacation. (June Hearing at 5:30–6:05, Ex. 2 to Resp., ECF No. 54-2). She confirmed that she had since spoken to Defendant and that he did not want to withdraw his

plea, but just wanted to get out of the Pahrump pretrial detention facility. (*Id.*).  When she asked if he was truly not competent to enter his plea, he said that he was competent, he just wanted to get out of Pahrump and that the letters were a symptom of his illness. (*Id.* at 6:30–6:45). Importantly, Defendant's counsel told the Court that Defendant said he was ready to proceed to sentencing. (*Id.* at 6:30–7:05).  Counsel further confirmed that Defendant was being treated for his mental illness in Pahrump, taking his medications, but that they did not cure all of his symptoms. (*Id.* at 7:00–8:25).

The Court noted concern that the guilty plea was based on Defendant's desire for medical care, and his counsel explained that he'd like to be placed in a BOP prison. (*Id.* at 11:00–15:45).   Defendant stated that he hoped the Court would sentence him and recommend that he be sent to a BOP medical facility. (*Id.*).  When asked why he sent the letters, he said he was going through a spiral, had been depressed, couldn't reach his attorney, and needed to get to a medical facility "as fast as possible." (*Id.* at 16:00–17:00).  Defendant mistakenly believed that sending the letters would get him to a medical facility faster, but his attorney explained that was not the case. (*Id.*).  The Court then asked Defendant directly if he wanted to withdraw his guilty plea, and he responded no. (*Id.* at 17:10–17:30).

The Court explained that it cannot accept a guilty plea based solely on his desire to get better medical care at a different facility, so the Court again canvasses Defendant about the elements of the crimes. (*Id.* at 18:30–25:00).  After hearing the elements of each claim, he admitted guilt as to all elements of both charges. (*Id.* at 19:51–25:00).  Defendant confirmed that he understood he was waiving his right to appeal and agreed that the factual basis of the plea agreement was true. (*Id.* at 25:00–27:00).  The Court asked again whether Defendant wanted to be sentenced, and he said yes, and that he understood what was going on. (*Id.* at 24:00–24:45).  Lastly, at the Government's request, the Court confirmed that each of the specific facts contained in the plea agreement were true, and the Defendant replied

affirmatively. (*Id.* at 26:00–28:50).  Thus, the Court concluded that as of that day, there was no fair and just reason to withdraw his guilty plea. (*Id.* at 29:00).  Even after the Court, and his own attorney, explained to Defendant that the BOP may not provide any additional treatment for his mental health, he confirmed that he still wanted to go through with sentencing. (*Id.* at 30:00–35:10).  Despite all this, the Court determined that Defendant should have additional time to talk privately to his attorney and rescheduled Defendant's sentencing. (*Id.* at 35:00–37:00).  Defendant told his attorney he did not need much time to talk to her because he was "good to go." (*Id.* at 36:40).

Thus, after a careful review of the record and prior hearings, the totality of circumstances demonstrate that Defendant's depression, mental stress, and desire to be moved to a BOP prison, did not substantially alter his ability make a plea decision freely and voluntarily. *See United States v. Torres*, 697 F. App'x 541 (9th Cir. 2017) (holding that the petitioner's "claim that he suffered from untreated depression when he pleaded guilty does not render his plea involuntary").  The Court need not grant a request to withdraw when Defendant's stated reasons contradict statements made during the plea colloquy and during two separate hearings. *See United States v. Castello*, 724 F.2d 814, 815 (9th Cir. 1984).

When Dr. Piasecki evaluated Defendant for the first time, she concluded that he was competent to stand trial.  During her second evaluation, she found his decision-making was compromised but notes that "Mr. Hamelin's decision making was not influenced by hallucinations or delusions at the time of his plea or at the time of my assessment." Defendant's depression and mental state at the time of his plea clearly existed when he entered his plea, and thus this reason does not fall into the list of categories that the Ninth Circuit has determined are "fair and just." *See Ortega-Asciano*, 376 F.3d at 883 ("Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the

defendant entered his plea."). His motion to withdraw is not otherwise based on an inadequate plea colloquy, new evidence, intervening circumstances, or erroneous legal advice. Therefore, even applying the "fair and just" standard liberally, the Court finds that Defendant has not met his burden of establishing that withdrawal is warranted.

CONCLUSION

**IT IS HEREBY ORDERED** that the Defendant's Motion to Withdraw Guilty Plea, (ECF No. 51), is **DENIED.**

**DATED** this __15__ day of July, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court