TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - July 16, 2024          1

1                    IN THE UNITED STATES DISTRICT COURT

2                         FOR THE DISTRICT OF NEVADA

3    UNITED STATES OF AMERICA,        )  CASE NO. 2:23-cr-00111-GMN-DJA
                                      )
4                   Plaintiff,        )  Las Vegas, Nevada
                                      )  July 16, 2024
5           vs.                       )  Courtroom 7D
                                      )
6    ANTHONY LEWIS HAMELIN,           )  Recording method:  Liberty/ECRO
                                      )  9:04 a.m. - 9:41 a.m.
7                   Defendant.        )  IMPOSITION OF SENTENCE
     ─────────────────────────────   )
8                                        *C E R T I F I E D   C O P Y*

9

10

11                        TRANSCRIPT OF PROCEEDINGS

12              BEFORE THE HONORABLE GLORIA M. NAVARRO,
                    UNITED STATES DISTRICT COURT JUDGE

13

14
     APPEARANCES:  (See next page)
15

16   Recorded by:  Araceli Bareng

17   Transcribed by:      PAIGE M. CHRISTIAN, RMR, CRR, CCR #955
                          United States District Court
18                        333 Las Vegas Boulevard South
                          Las Vegas, Nevada  89101
19

20

21

22

23

24   Proceedings recorded by electronic sound recording.
     Transcript produced by mechanical stenography and computer.
25

1  **APPEARANCES:**

2

3  For the Government:

4          **JACOB HAILE OPERSKALSKI, AUSA**
           *UNITED STATES ATTORNEY'S OFFICE*
5          501 Las Vegas Boulevard South
           Suite 1100
6          Las Vegas, NV 89101
           (702) 388-6336
7          E-mail: jacob.operskalski@usdoj.gov

8

For Defendant Anthony Lewis Hamelin:
9
           **JOANNE L. DIAMOND, AFPD**
10         *OFFICE OF THE FEDERAL PUBLIC DEFENDER*
           411 E. Bonneville Avenue
11         Suite 250
           Las Vegas, NV 89101
12         (702) 388-6577
           E-mail: joanne_diamond@fd.org
13

14

15

16  ALSO PRESENT:  Erica Strome, USPO

17                         * * * * * *

18

19

20

21

22

23

24

25

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - July 16, 2024          3

1               LAS VEGAS, NEVADA; JULY 16, 2024; 9:04 A.M.

2                             --o0o--

3                    P R O C E E D I N G S

4          **COURTROOM ADMINISTRATOR:**  This is the time set for

5    the imposition of sentence in Case No. 2:23-cr-00111-GMN-DJA,

6    United States of America vs. Anthony Lewis Hamelin.

7          Counsel, your appearances, please.

8          **MR. OPERSKALSKI:**  Good morning, Your Honor.  Jake

9    Operskalski on behalf of the United States.

10         **THE COURT:**  Good morning, Mr. Operskalski.

11         **MS. DIAMOND:**  Good morning, Your Honor.  Joanne

12   Diamond with the Federal Public Defender's Office.  This is

13   Mr. Hamelin, who is present and in custody.

14         **THE COURT:**  Good morning, Ms. Diamond.

15         And good morning, Mr. Hamelin.

16         **THE DEFENDANT:**  Good morning.

17         **THE COURT:**  Ready to go forward this morning?

18         **MS. DIAMOND:**  Yes, Your Honor.

19         **MR. OPERSKALSKI:**  Yes, Your Honor.

20         **THE COURT:**  All right.  So there was a motion to

21   withdraw the guilty plea that was filed after the last hearing.

22   I did review that along with the response and the information

23   provided by the psychiatrist who evaluated Mr. Hamelin, and I did

24   draft an order denying that motion to withdraw the guilty plea.

25         Did all the parties receive a copy of that order, or

1    do we need to print one out for you here?

2              **MR. OPERSKALSKI:**  Yes, Your Honor.  I have received a

3    copy.

4              **MS. DIAMOND:**  Yes, Your Honor.

5              **THE COURT:**  All right.  So we're going to go forward

6    with sentencing, and -- so, Mr. Hamelin -- I don't know why it's

7    got moved around -- you did appear on March 11th, 2024, before

8    the Court, and you entered a plea of guilty to one count of

9    influencing, impeding, or retaliating against a federal official

10   by threatening a family member, in violation of Title 18 of

11   United States Code Section 115(a)(1)(A) and 115(b)(1)(B)(ii).

12   You also pled guilty to Count 2, transmitting a communication

13   containing a threat to injure, in violation of Title 18 of the

14   United States Code Section 875(c).

15             So I have reviewed the presentence report and the

16   plea agreement.  I do accept your plea of guilty, and you're

17   hereby adjudicated guilty of these two charges.

18             Now, Ms. Diamond, have you had sufficient time to

19   review the presentence report with your client?

20             **MS. DIAMOND:**  Yes, Your Honor.

21             **THE COURT:**  And just to make sure we're talking about

22   the same one, the one that I have is a revised report.  It was

23   revised on May 28th of 2024.

24             Is that the same one that --

25             **MS. DIAMOND:**  Yes, Your Honor.

1          **THE COURT:**  -- you reviewed?

2          All right.  And did you find any mistakes, typos,

3  changes of any kind you would like me to consider making to that

4  report?

5          **MS. DIAMOND:**  No, Your Honor.

6          **THE COURT:**  Mr. Hamelin, did you have sufficient time

7  to review that report with your attorney, as well?

8          **THE DEFENDANT:**  Yes, Your Honor.

9          **THE COURT:**  And did you find any mistakes, typos, any

10  changes at all you would like me to make in that report, keeping

11  in mind this report will follow you?

12          So, if you are sentenced to prison, you -- it will be

13  used by the Bureau of Prisons to determine which facility you can

14  be housed in.  We don't have a prison in the -- in the district

15  of Nevada, so it will be in a different state.  They can also use

16  this to determine who your roommates can or cannot be, what

17  programs you're eligible for, and it can also be used by other

18  federal agencies, for example, Homeland Security or the IRS.  I'm

19  told that it's very difficult to change any information in this

20  report once it leaves my hands.

21          So is there any information at all that you would

22  like me to consider changing?

23          **THE DEFENDANT:**  No, Your Honor.

24          **THE COURT:**  All right.  So let's look at the offense

25  level, which is on page 8.  It says there that the probation

1    office used a 2023 guidelines to determine that the two counts

2    should be grouped.  So the base offense level is 12 pursuant to

3    guideline Section 2A6.1(a)(1).  Then six levels were added

4    because the offense involved conduct evidencing an intent to

5    carry out such a threat pursuant to Section 2A6.1(b)(1).  And

6    then two more levels were added because there was more than two

7    threats involved, so pursuant to Section 2A6.1(b)(2)(A).

8           And then, this one I'm not sure about.  I might need

9    a little bit of a description from the probation office.  Six

10   levels were added pursuant to Section 3A1.1(b) because Section

11   3A1.2(a)(1) and Subsection 2 apply, and the applicable Chapter 2

12   guideline is from Chapter 2 Part A, offenses against a person.

13          So, factually, what is the factual justification for

14   adding six levels there?

15          **OFFICER STROME:**  Your Honor, it would be that the

16   victim was a government officer or employee or a member of the

17   immediate family of a person described in Subsection (a), which

18   is government officer or employee.

19          **THE COURT:**  Okay.  My apologies.

20          **MS. DIAMOND:**  Thank you.

21          **THE COURT:**  All right.  So that provides an adjusted

22   offense level of 26.  And minus two for acceptance of

23   responsibility pursuant to 3E1.1(a).  The probation office also

24   deducted one more level, assuming that the government would move

25   for that additional level.

1          Does the government so move?

2          **MR. OPERSKALSKI:**  Your Honor, I do not.  I -- I spoke

3     with defense counsel and probation prior to the hearing today.

4     In light of what has happened after the initial presentence

5     investigation report was drafted and after sentencing memoranda

6     were filed in this case, the defendant has, as the Court knows,

7     filed his motion to withdraw his guilty plea.

8          Accordingly, I do not believe that I can factually

9     state that he has accepted responsibility, and I would argue that

10    he should not receive points -- either of the two points or the

11    additional third level off.

12          However -- and this is perhaps more appropriate to be

13    addressed later on -- I am sticking by the Court's -- or by the

14    government's sentencing recommendation from the sentencing

15    memoranda, and that is in this plea agreement.  So we're arguing

16    for the same result, just a different way of getting there.

17          So I'm going to be arguing for a downward variance to

18    get to 46 months but asking that acceptance of responsibility

19    points not apply.  Thank you.

20          **THE COURT:**  All right.  Thank you.  Well, I do agree

21    that the government has the authority to decide whether or not a

22    timely plea has been entered and whether there was any, you know,

23    misconduct or any inappropriate conduct as far as entering the

24    timely plea and notifying the government of -- of the timely

25    intent to file a plea and saving the government resources and so

1    forth.  So that is the government's discretion whether or not to

2    add -- not add, but subtract an additional level under 3E1.1(b).

3    So I agree with that.

4              However, as for the acceptance of responsibility, I

5    asked Mr. Hamelin several times about the facts, about the

6    elements, and he's never told me, No, I didn't do it.  His

7    explanation for the withdrawal was his depression, his diagnosis,

8    and things of that matter.

9              So, I'm not going to, I guess, withdraw the -- the

10   two-level reduction for acceptance of responsibility.  I think he

11   has factually accepted responsibility, even if he has some

12   misgivings about -- about going forward.  But I think that he has

13   very clearly admitted the facts of the case.  Maybe the legal

14   ramifications are still difficult to swallow, but he does accept

15   responsibility factually, so I'm not going to change the

16   acceptance of responsibility.

17             But I do agree that the government has that

18   discretion in regards to Subsection (b) of 3E1.1.

19             So the total offense level would be a 22 instead of a

20   23.

21             So let's look at the criminal history.  There's a

22   lot.  So starting at the age of 18 in 199 -- I'm sorry.

23             Did you want to say something?

24             **OFFICER STROME:**  My apologies, Your Honor.

25             **THE COURT:**  Yes.

1          **OFFICER STROME:**  You are inclined to leave the

2    two-level reduction pursuant to 3E1.1 but will not be adding the

3    one level pursuant to 3E1.1 Subsection (b), and then that would

4    be 24, correct?

5          **THE COURT:**  24 -- oh, yes.  24.  I went the opposite

6    way.  Yes.  24.  You're right.  Goes up, not down.  Absolutely,

7    yes.

8          So the criminal history starts in 1990, age 18,

9    operating a vehicle without owner's consent.  He stole a vehicle

10   from an automobile dealership in Wisconsin, then he also stole

11   another vehicle from the same dealership, and he confessed to

12   stealing both vehicles, but he wasn't sentenced until 1995

13   consecutive to another offense, which is in paragraph 51.  So

14   this is paragraph 45, the one we're talking about here.

15         The next paragraph, paragraph 46, is also from the

16   '90s.  This one's from 1991.  At the age of 19, he pled guilty to

17   unlawful possession of a stolen vehicle and received a sentence

18   of 30 months of probation.  Then he had a probation violation.

19   He was sentenced to five years in prison concurrent with another

20   offense in paragraph 47.

21         For all of these, he doesn't receive any criminal

22   history points.  They're too old pursuant to 4A1.2(e)(3).

23         Then, in 1992, at the age of 20, he pleads guilty to

24   receiving, possessing, or selling a stolen motor vehicle, also a

25   felony.  He pleads guilty and he's sentenced to six years in

1   prison.  Again, he has no criminal history points pursuant to

2   4A1.2(e)(3).

3           In paragraph 48, he's charged with seven counts of

4   threats against the President, in violation of Title 18 of United

5   States Code Section 871.  And he did plead guilty and was

6   sentenced to 37 months in prison per count concurrent followed by

7   three years of supervision.  Pursuant to guideline 4A1.2(e)(3),

8   he does not receive any criminal history points for that offense,

9   but the facts of that offense does inform the Court that this is

10  action, conduct, that the defendant has taken before.

11          In this particular case, back in '92, it started.  He

12  was repeatedly calling and saying, you know, President Bush is a

13  bad man.  Many people will die.  You thought Gacy was bad.  Wait

14  till I get out.  He also threatened the First Lady and the

15  grandchildren of President Bush.

16          On June 18th of 1992, he admitted that Bush had

17  angered the master, a spirit who communicated with him via

18  telepathy, and he believed the master was responsible for John

19  Hinckley's assassination attempt.  And the master was angry with

20  Hinckley for not completing his assignment correctly.  And he's

21  described wanting to steal a vehicle, travel to Vegas, purchase a

22  rifle, go to a mall in Wisconsin, and shoot up the place.

23          In October and November of '92, he sent numerous

24  threatening letters to the police department, the FBI, and its

25  probation office which contained profanity and vulgar threats

1  towards the First Lady, Mrs. Bush, and also Bush's grandchildren.

2          Another letter he signed in blood, threatened the

3  detective, the detective's family, a witness against him.

4  Mentioned Jack the Ripper, Dahmer, Gacy.

5          In February and April of 1993, he claimed to have a

6  strong desire to kidnap, rape, and kill boys.

7          In July of 1993, he again threatened to kill the

8  President of the United States.  This time it was Clinton.  And

9  he claimed that upon his release, he would kill a police officer,

10  steal the uniform, kill children in Idaho, Wisconsin, and Florida

11  before killing the President Clinton in Washington, D.C.  And

12  then when he was advised during that interview with law

13  enforcement that he would likely be killed during an

14  assassination attempt, he remarked that he would be famous.

15          In December of 1993, he was again interviewed,

16  admitted to writing other letters -- I'm skipping because there's

17  so much.  I'm just, sort of, going to the most serious ones --

18  admitting writing the letters, claiming that he was Marxist and

19  was going to kill the President of the United States, Clinton,

20  during -- even if -- and that he did expect to be killed during

21  the attempt.

22          On April 19th of '94, he was ordered to go to a

23  competency evaluation and found competent, so that -- in that

24  case, he was sentenced to the 37 months in prison per count.

25  There were seven counts.  And then -- but it was concurrent to

1    each other.  Again, no criminal history points there.

2              So, moving on to paragraph 49.  At the age of 22 --

3    this is in 1994 -- he was convicted of conspiracy to defraud the

4    United States, two counts of that, also, two counts of mailing

5    threatening communications --

6              **THE DEFENDANT:**  Your Honor.

7              **THE COURT:**  Yes.

8              **THE DEFENDANT:**  I was never convicted of conspiracy

9    to fraud the United States.  That was -- that was just all

10   threats -- all threats to the President of the United States.

11   That was just something -- I don't know what that was.  That was

12   just threats to -- to the President.  Conspiracy involves two

13   people.  It was just me, myself, and I.  So it was never a

14   conspiracy to defraud.  But I just -- I just -- I don't know what

15   that was, but it just -- it is what it is.

16             **THE COURT:**  Well (indiscernible).

17             **THE DEFENDANT:**  No.  And it's -- it's -- I mean, we

18   can leave it as it is, but, I mean, I never defrauded the United

19   States.  I was just -- I just threatened the President and -- I

20   mean, I never -- I never defrauded the United States.

21             **THE COURT:**  All right.  I'll ask the probation office

22   to double-check that and make sure that -- because there was a

23   criminal complaint first filed September 16th of 1993 for some of

24   the conduct in this paragraph.  And then, the complaint was

25   dismissed without prejudice upon the government's motion, and

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - July 16, 2024          13

1   instead, a criminal indictment was filed November 1st of 1995.

2   And this one is out of the District of Chicago, Docket No.

3   93-cr-676.

4           So while the probation office is double-checking

5   their records, I'll just read what the sentence was, make sure

6   that we agree that that's the correct sentence.  It says that in

7   '96, he was sentenced to 46 months in prison per count concurrent

8   to each other but consecutive to Case No. 94-cr-30037, which is

9   in paragraph 48, right above.  Also, it was consecutive to Case

10  No. 95-cf-398, which is in paragraph 51 that I haven't read yet.

11  And then it was also consecutive to 92-cf-244, which is paragraph

12  45 that I did already read.

13          So, in that case, he made -- let's see -- threats

14  to -- to kill President Clinton, referenced Francisco Duran's

15  shooting at the White House, and so forth.

16          Let's see.  There is some notes there about his

17  institutional adjustment.  While he was incarcerated, was

18  disciplined for possessing intoxicants, giving money or accepting

19  money without authorization, refusing to obey an order, refusing

20  work program assignment, refusing to obey an order, possessing a

21  dangerous weapon, assaulting without serious injury

22  (indiscernible) staff member, and threatening bodily harm.

23          All right.  So, in 1995, he's convicted of take and

24  drive vehicle without owner's consent.  There, he made a key

25  after obtaining the vehicle identification number and returned to

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - July 16, 2024         14

1   the dealership that night and stole the vehicle.  He was

2   sentenced to two years in prison concurrent with some other cases

3   and consecutive to some of the other cases.  Again, pursuant to

4   4A1.2(e)(3), he receives no criminal history points for that

5   offense.

6           In paragraph 51, he's convicted of attempt battery to

7   law enforcement firefighters with deadly weapon.  Felony.  Pled

8   no contest.  Was sentenced to 15 months in prison consecutive to

9   the 1992 case.  Again, pursuant to 4A1.2(e)(3), he receives no

10  criminal history points for that offense.  He was an inmate, took

11  a mop, broke off the handle to use as a club, smashed the front

12  of a television, then stood in the entry to the day room in a

13  batter's stance, like a baseball batter's stance, with the mop

14  handle cocked like a baseball bat, and as officers entered with

15  their shields, the defendant began hitting their shields but

16  caused no injury to the officers.  So he receives no criminal

17  history points there.

18          So, his total criminal history score is zero, which

19  obviously underrepresents his actual conduct, but that's why I

20  read it out into the record, because it does still inform, you

21  know, the Court, even though there's no points that are going to

22  be provided for those -- that conduct.  So he is in a criminal

23  history category of 1.

24          I'm just going to keep going, Officer Strome, but

25  when you get to the point that you can clarify or confirm the

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - July 16, 2024          15

1    information, just raise your hand, and I'll come back to you

2    because I don't want to rush you.

3              So that's the criminal history.  And let's put that

4    together with the offense level that we have here.

5              So, on paragraph -- I'm sorry, page 26, we see that

6    the statute provides that for Count 1, Court is authorized to

7    sentence him up to ten years and for Count 2, up to five years.

8    The guidelines did provide for a 46- to 56-month sentence under

9    the original calculation with an offense level of 23.  But

10   because we have an offense level of 24, the guideline range

11   changes, goes up just a little bit to 51 to 63 months would be

12   the range.  So the low end there would be 51, and Mr. Operskalski

13   says the government is still willing to recommend the 46 months

14   per -- per count concurrent to each other.

15             Supervised release is authorized for Count 1, up to

16   three years and for Count 2, up to three years.  Likewise, the

17   guidelines provide a one- to three-year range for both counts,

18   and the probation office is recommending three years per count

19   concurrent.

20             The probation is authorized under the statute for one

21   to five years per count, but under the guidelines, it's -- he's

22   not eligible, and the probation office is not recommending it.

23             And the fine amount is up to $250,000 per count under

24   the statute, but the guideline range is much less, potentially in

25   the 20,000-dollar minimum range, up to $200,000, at least under

1  the original offense level of 23.  So it could be up a little bit

2  higher, but it doesn't matter because it's not recommended due to

3  his financial condition.

4       Restitution is requested up to $1,000, and there is a

5  special assessment of $100 per count, which is required by

6  statute.  And there's two counts, so that would be $200.

7       So, I don't know if you want to go into the judiciary

8  sentencing information database and what the average and the

9  means are and so forth, but it looks like the parties are still

10  in agreement that a 46-month sentence per count concurrent to

11  each other would be appropriate and not probation because even

12  though he's a Criminal History Category Zero, he does have

13  significant past conduct that would indicate that is not the

14  first time or just a one-off where all of a sudden, you know,

15  he's otherwise been a reasonably criminal-conduct free individual

16  and this is the first time he did something like this.

17       So 46 months concurrent, is that still the

18  recommendation, Mr. Operskalski, on behalf of the government,

19  with three years of supervised release per count, no fine,

20  no -- oh, a thousand-dollar restitution and $200 special

21  assessment?

22       **MR. OPERSKALSKI:**  It is, Your Honor.

23       And may I make another clarifying point on the --

24       **THE COURT:**  You can --

25       **MR. OPERSKALSKI:**  -- guideline calculation --

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - July 16, 2024          17

1          **THE COURT:**  -- speak as much as you like.  This is

2   your turn.  I'm done.

3          **MR. OPERSKALSKI:**  Thank you, Your Honor.

4          Just I want to make sure the government is strictly

5   adhering to the plea agreement.  So the argument that I've made

6   -- and the Court has rejected it -- is that because he

7   withdrew -- or tried to withdraw his plea agreement, he should

8   not get the two points and therefore should not get the third.

9   However, since the Court has ruled that he gets the two points

10  for acceptance of responsibility, our plea agreement does state

11  that if he qualifies for the two, the government will move for

12  the third.

13         So, accordingly, in light of the Court's ruling, then

14  I would be moving for the third.  And the plea agreement

15  calculations should comport with what is in the final presentence

16  investigation report, so a final of total offense level of 23,

17  Criminal History Category 1, and a range of 46 to 57 months.

18  Thank you, Your Honor.

19         **THE COURT:**  Thank you.

20         All right.  Mr. Hamelin, you do have the right to

21  speak on behalf of yourself and address the Court before I impose

22  sentence.  I will tell you that I am inclined to follow the

23  recommendation of the parties and sentence you to the 46 months

24  in custody for Count 1 and Count 2 to be run concurrent together

25  to be served at the same time with three years of supervision per

1  count, but again, to be run together at the same time with a

2  thousand-dollar restitution and 200-dollar special assessment

3  fee.

4          But I'm not saying that so that you don't speak.  If

5  you want to speak, I still want you to feel free to speak,

6  especially if it would be helpful for you to get anything off

7  your chest that you would like to.  And then, obviously, your

8  attorney, Ms. Diamond, has -- is here to speak on your behalf, so

9  she's -- she'll speak if you'd like instead.  It's up to you.

10          **THE DEFENDANT:**  Yes, Your Honor.  I'm sorry all this

11  took place.  I'm sorry I didn't take any medication, which led to

12  all this to begin with.

13          And, you know, you're right.  I have an extensive

14  criminal history -- criminal history.  But a lot of that stems

15  from the fact that I didn't take my medication.

16          My mental -- mental health history goes back to the

17  time when I was diagnosed at the age of 20 in the Dubois County

18  Jail (phonetic) with bipolar disorder.  And all the time that I

19  was in prison, I wasn't treated for mental health.  I wasn't

20  treated for bipolar disorder.

21          So all of this -- all this -- all my -- my

22  disciplinary record in the BOP -- I wasn't treated for my bipolar

23  disorder all the time I was in the BOP or in the county jails.  I

24  wasn't treated, so I was bouncing off the walls.  I was a

25  disciplinary problem when I was in the BOP because I wasn't

1  treated for my bipolar disorder.

2           It makes it look like I got out of prison, and I

3  committed all these crimes one after the other, one after the

4  other, one after the other.  But it was a crime spree.  It all

5  happened very close together, and I was sentenced.  And it makes

6  like I got out of prison, committed a crime, got out of prison,

7  committed a crime, and it -- it didn't happen like that at all.

8           So, you know, I'm sorry all this happened.  I'm sorry

9  I didn't take my medication, and -- and this led to where I'm at

10 today.  And I'm sorry that, you know, I was -- I wasn't diagnosed

11 earlier when I was in my teens.  And I'm sorry that, you know, I

12 am where I'm at, you know.  And that's all I have to say.

13          **THE COURT:**  All right.  Thank you, sir.

14          Well, I agree with you.  I'm sorry you didn't get

15 diagnosed earlier, too.  But now you've been diagnosed, and you

16 do take medication, and you know you have to take it.  And so,

17 that -- that's the problem is, like, this isn't the first time

18 that you didn't take your -- this isn't -- it's not like you went

19 to the pharmacy, and they say, We don't have the medication.

20 It's on back order.  It's going to take 30 days.  And in the

21 meantime, like, what am I supposed to do?  I don't have

22 medication.  And so, instead, you -- I don't know -- take alcohol

23 or go to a dispensary and get some marijuana.

24          You know, so it's -- I mean, that wouldn't

25 necessarily be a defense, but that would be more understandable

1    that you don't know what to do.  You don't -- here, you have

2    medication.  You've been diagnosed.  You know what happens when

3    you don't take medication.

4            So, please.  I mean, I'm begging you.  Seriously, we

5    don't want to keep you in prison for the rest of your life.  Take

6    that medication.  If you don't like it, go back to the doctor and

7    say, This isn't working anymore, or the side effects are

8    horrible.  Let's try a different one.  Let's try adjusting a dose

9    or maybe a different combination of medicine.

10           But don't just cold turkey quit the medicine because

11   you're going to do things like this.  It's no different than if

12   you were a diabetic and you stopped taking your medication and

13   you go into a coma.  You know, you -- it's a disease, like

14   anything else.

15           If you had cancer and you didn't get it -- you didn't

16   have any treatment, you would die, right?

17           So, this is just a disease, and you need medication.

18   And if you don't take it, you're going to end up either killing

19   someone, killing yourself, or spending the rest of your life in

20   prison.  It's horrible.  It's no different than many other types,

21   you know, high blood pressure, whatever it is.  You have a heart

22   attack.  You die.  So try to think of it that way.

23           I don't know if that helps.  I'm sorry.  But I -- I

24   do sympathize with you, but what you're doing is very dangerous,

25   and so, that's why we have to put you in prison.

1    So I'm glad that -- you know, with a lot of people I

2 sentence, there's -- there's nothing I can do to help them as far

3 as, you know, you -- you do.  You have the keys to your own cell,

4 in a sense, right?

5    It's those pills, you know, the -- take the

6 medication, and then you'll be able to stay out of trouble.

7    All right.  So, Ms. Diamond, anything else that you

8 want to add on the record to make everything clear?

9    **MS. DIAMOND:**  No, Your Honor.  The one thing I will

10 clear up, just so Mr. Operskalski doesn't have to pop back up

11 again, is that I'll -- is that the government's no longer seeking

12 restitution.  So I'm asking the Court to impose zero dollars

13 restitution.  I believe the government is going to join that.

14    **THE COURT:**  Is that right, Mr. Operskalski?

15    **MR. OPERSKALSKI:**  That is correct, Your Honor.  It is

16 mandatory restitution pursuant to the statute, but I have spoken

17 with the victims in this case, and they are not seeking

18 restitution.  They would like to just get this -- this incident

19 behind them.  And so, I would just ask the Court impose a -- an

20 order of zero dollars.  And just for the record, as well, to

21 state that the government has --

22    **THE COURT:**  What do we do?  I mean, if it's mandatory

23 that I order it, I think I have to order it, but could we just

24 consider it remitted like we do in the deportation -- the reentry

25 after deportation is a hundred-dollar special assessment fee, and

1   the government moves to have it considered remitted.  And so,

2   that way --

3                 **MR. OPERSKALSKI:**  I think we -- we can do it that

4   way, as well, Your Honor --

5                 **THE COURT:**  Is that okay?  Can do it that way?  You

6   can --

7                 **MR. OPERSKALSKI:**  Can move to remit it, as well.

8   Thank you, Your Honor.

9                 And just to further state for the record that the

10  government has complied with the Victim Rights Act.  We have

11  consulted with the victims throughout this case.  They were

12  notified of the plea agreement and agreed that it was an

13  appropriate resolution prior to offering that plea agreement.

14  And they were afforded an opportunity to speak today, but they

15  declined to -- to state anything for the Court today, as I said,

16  in the interest of having this behind them.  Thank you.

17                **THE COURT:**  All right.  Thank you.

18                All right.  So, Mr. Hamelin, you're very fortunate.

19  It's like the victims don't want you to go bankrupt paying a

20  thousand dollars.  They don't want you to have to be owing some

21  restitution.  I think everybody just wants you to take your

22  medication and stop making threats and don't take any more cars

23  and -- and, you know, no more negative thoughts and conduct to

24  try to hurt people.

25                Officer Strome, do we have some clarification on that

1 paragraph?

2              **OFFICER STROME:**  Unfortunately, because the case is

3 20 years old, I do not have the judgment of conviction, but I do

4 have the court docket entry that does show that Counts 1 and 2

5 was conspiracy to defraud the United States.

6              **THE COURT:**  I'm sorry.  And what document on the

7 docket is that -- the judgment?

8              **OFFICER STROME:**  It's -- it would be just the court

9 minutes.

10             **THE COURT:**  What did the court minutes say about

11 those counts?  Does it say there was a conviction, or --

12             **OFFICER STROME:**  Yes.

13             **THE COURT:**  -- was it dismissed?

14             **OFFICER STROME:**  And that he was sentenced to 46

15 months on Counts 1, 2, 3, 4, 5, and 6 to run concurrently.

16             **THE COURT:**  Okay.

17             **THE DEFENDANT:**  I have no idea, Your Honor, because

18 it was just me, myself, and I.

19             **THE COURT:**  Yeah.  So, Ms. Diamond, do you want me to

20 add something to one of those paragraphs to state that the

21 defendant does not believe he was ever convicted of conspiracy

22 because he was acting alone, and that might be a --

23             **MS. DIAMOND:**  Yes, please, Your Honor.

24             **THE COURT:**  You know, it's so old.  It's back in '94.

25 So if we can do that, I'll order that the PSR -- this is

1   paragraph 49 -- be clarified that the defendant does not recall

2   being convicted of conspiracy in Counts 1, 2, 5, and 6 because he

3   was acting alone.

4           **MS. DIAMOND:**  Thank you, Your Honor.  One of the

5   issues is that the prior PSRs, how they conduct them there, they

6   don't interview Mr. Hamelin, so he never had any input and wasn't

7   able to clarify that with the previous PSRs.

8           **THE COURT:**  Okay.  Thank you.

9           All right.  So anything else that we need to --

10          **OFFICER STROME:**  My apologies for interrupting, Your

11  Honor.

12          **THE COURT:**  Oh, no.

13          **OFFICER STROME:**  I just wanted to clarify for the

14  record, with the government moving for the one additional point

15  for acceptance of responsibility, is that the calculation that

16  you are adopting?

17          **THE COURT:**  Yes.

18          **OFFICER STROME:**  Okay.  So it would be an offense

19  level of 23, criminal history category of 1, which results in a

20  guideline --

21          **THE COURT:**  No.  We went back to 20 -- yes.  23.

22  Yeah.  It's the same as it was as it's written --

23          **OFFICER STROME:**  -- in the presentence report?

24          **THE COURT:**  Yeah, because the government withdraw

25  its -- its initial motion since I'm going to be giving him --

1          **OFFICER STROME:**  May I --

2          **THE COURT:**  -- not giving him.  I guess, you're -- I

3    am going to deduct the two points for acceptance of

4    responsibility.  So the government said, in the plea agreement,

5    they agreed that if I did that, then they would move for the

6    timely plea additional point.  So we're back to exactly what it

7    was, so the plea agreement is correct.

8          **OFFICER STROME:**  Okay.  May I state the guideline

9    provisions for the record --

10          **THE COURT:**  Yes.

11          **OFFICER STROME:**  -- so it is clear?

12          With a total offense level of 23 and a criminal

13    history category of 1, the guideline provision custodial range

14    would be 46 months to 57 months.  Supervised release would be one

15    to three years per count, and then the fine range would be 20,000

16    to 200,000.

17          **THE COURT:**  All right.  Thank you.

18          All right.  So we already know the victims don't wish

19    to be heard.  So the Court has heard statements of counsel for

20    the government, for the defense, and the defendant's remarks.  I

21    have read the presentence report submitted by the probation

22    department.  I do consider its contents and calculation to be

23    correct, and I've also considered the factors set forth in Title

24    18 of United States Code Section 3553(a).

25          If you'll please stand, Mr. Hamelin.

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - July 16, 2024        26

1            You're hereby committed to the Bureau of Prisons for

2    a term of 46 months for Count 1 and 46 months for Count 2 to be

3    served concurrent together to each other.  This is the sentence

4    the Court finds to be sufficient but not more than necessary to

5    comply with the purposes of sentencing.

6            There will be no fine due to your financial

7    condition.  The fine is waived.

8            There is a mandatory restitution of $1,000.  However,

9    the government has agreed to consider it remitted, which is paid

10   in full.

11           And then, there is a mandatory penalty assessment of

12   $100 per count.  There's two counts, so that means it's $200.

13   And that is required by statute, so it does have to be paid.

14           And supervised release is imposed for a term of three

15   years per count concurrent to each other, so to be served

16   together at the same time for the two counts.

17           And the conditions are on -- in your PSR, if you want

18   to follow along, they start on the bottom of page 27.  I am

19   imposing the mandatory conditions as well as the standard

20   conditions.  And then the special conditions are on page 29.

21           Number one is mental health treatment.  You must

22   participate in an outpatient mental health treatment program and

23   follow the rules and regulations of that program.  The probation

24   officer will supervise your participation in the program, the

25   provider, location, modality, duration, intensity, et cetera, and

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - July 16, 2024          27

1    you must pay the cost of the program.

2              Number two is no contact.  You must not communicate

3    or otherwise contact the victims in this case with the initials

4    K.M., C.M., and L.M., either directly or through someone else,

5    without first obtaining the permission of the probation office.

6              Number three, the place restriction geographical

7    area.  You must not knowingly enter or attend any public events

8    where you have reason to believe that the victims, K.M., C.M.,

9    and L.M., will be without first obtaining the permission of the

10   probation officer.

11             And number four, you must submit your person,

12   property, house, residence, vehicle, papers, computers as defined

13   in Title 18 of United States Code Section 1030(e)(1), and other

14   electronic communication or data storage device or media or

15   office to a search conducted by the U.S. probation officer.

16   Failure to submit to the search may be ground for revocation of

17   release.  And you must warn any other occupants that the premises

18   may be subject to a search pursuant to this condition.

19             The probation officer may conduct a search under this

20   condition only when reasonable suspicion exists that you have

21   violated a condition of supervision and that the areas to be

22   searched contain evidence of this violation.  Any search must be

23   conducted at a reasonable time and in a reasonable manner.

24             Number five, residential reentry center.  You must

25   reside in the residential reentry center for a term of 180 days

1    and must follow the rules and regulations of that center.

2              Obviously, that can be modified if it turns out that

3    he does have a place to live.  And my understanding is he was

4    transient before this, so I do want him to have a place to live.

5    I don't want him to be released from prison and just be on the

6    street somewhere not knowing where to go.  So he will have that

7    residential reentry center ordered so there is a bed available

8    for him.

9              All right.  Now, there were objections earlier to the

10   paragraph 117 about the $1,000, but we've taken care of that, so

11   I don't think there's any other objections.

12             **MS. DIAMOND:**  No, Your Honor.

13             **THE COURT:**  Okay.  So is -- well, I guess, just so

14   you remember, Mr. Hamelin, at your plea hearing, you did waive

15   some of your appellate rights, but you do have other appellate

16   rights which can never be waived.  So if you do wish to appeal,

17   you only have 14 days to file a notice of appeal.

18             And if Ms. Diamond's office cannot represent you,

19   she'll let me know so we can appoint a different attorney to

20   represent you, but you need to tell her if you want to appeal or

21   not.

22             If you cannot afford a copy of the documents in this

23   case, you know, transcripts from the hearings or other kind of

24   documents that you need for appeal, they'll be made available to

25   you free of charge at the government's expense.  So if you can't

1  afford an attorney, which I know you can't, you just need to let

2  Ms. Diamond know if you want to appeal so that we can make sure

3  her office can represent you, and if not, I'll appoint someone

4  else.

5            There's no final order of forfeiture.

6            Were there remaining counts that need to be

7  dismissed?

8            **MR. OPERSKALSKI:**  No, Your Honor.

9            **THE COURT:**  All right.  And is there a

10 recommendation, Ms. Diamond?

11           I'm sure there is for a medical facility for --

12           **MS. DIAMOND:**  Yes, Your Honor.  Mr. Hamelin would

13 like a recommendation to FMC Rochester.  It's the closest medical

14 center to Wisconsin, where his only family member, his cousin

15 Cindy, is.

16           And I don't know if the BOP would pay any attention

17 to this, but we would ask the Court, if possible, to recommend an

18 expedited transfer to BOP for all of the reasons the Court is

19 aware of Mr. Hamelin's mental health.

20           **THE COURT:**  Okay.  So expedited transfer for mental

21 health treatment?

22           **MS. DIAMOND:**  Yes, please, Your Honor.

23           **THE COURT:**  And federal medical center in Rochester,

24 Wisconsin, to be close to his cousin Cindy?

25           **MS. DIAMOND:**  Yes.  So FMC Rochester is in Minnesota,

 1  but it's the closest FMC to Wisconsin.  So I know the more detail

 2  the BOP have the better.

 3                  **THE COURT:**  Okay.  Sorry.  I misunderstood that,

 4  right?

 5                  So, Rochester, Minnesota is the federal medical

 6  center.

 7                  **MS. DIAMOND:**  Yes.

 8                  **THE COURT:**  And the purpose is that -- is to be close

 9  to his cousin Cindy, who resides in Wisconsin.

10                  **MS. DIAMOND:**  Yes, Your Honor.  Thank you.

11                  **THE COURT:**  All right.  Anything else on behalf of

12  the government?

13                  **MR. OPERSKALSKI:**  No, Your Honor.  Thank you.

14                  **THE COURT:**  Does the probation office have the

15  conditions of supervision to provide?

16                  **OFFICER STROME:**  Yes, Your Honor.

17                  **THE COURT:**  All right.  So here's a copy of the

18  conditions, Mr. Hamelin.

19                  **THE DEFENDANT:**  Thank you.

20                  **THE COURT:**  Make sure you review them carefully with

21  your attorney and your probation office to make sure you

22  understand them.  If you violate a condition of your supervision,

23  you will be returned to prison.  And you can't say, I didn't

24  understand I couldn't do that, because you have the opportunity

25  and the obligation to ask, Does this mean I can do this, or does

1    this mean I can't do that?

2          And some of these things you can do if you ask for

3    permission.  So just remember that to keep in touch with your

4    probation officer and ask if you've got a question about

5    something you may not be able to do.

6          Is there anything else, Ms. Diamond, that I need to

7    address for you?

8          **MS. DIAMOND:**  I don't believe so, Your Honor.  No.

9    Thank you.

10         **THE COURT:**  And you have provided a copy of any

11   medical documentation, diagnosis, medication he's taking to the

12   probation office so they can be attached to the PSR, and it will

13   go with him --

14         **MS. DIAMOND:**  I believe we did.  Your Honor, I

15   believe --

16         **THE COURT:**  It usually helps to speed things up,

17   too --

18         **MS. DIAMOND:**  -- medical records.

19         **OFFICER STROME:**  Yes.  I do have medical records, and

20   then I detailed his current prescription medications in the

21   presentence report --

22         **THE COURT:**  In the presentence report itself.  Okay.

23   All right.  Well, good luck to you, Mr. Hamelin.

24         **THE DEFENDANT:**  Thank you, Your Honor.

25         **THE COURT:**  All right.  You're welcome.  Have a good

1    day.  Thank you, everyone --

2              **MS. DIAMOND:**  Thank you, Your Honor.

3              **MR. OPERSKALSKI:**  Thank you, Your Honor.

4              **THE COURT:**  -- for being here this morning.  We'll be

5    off record.

6                   (*Proceedings adjourned at 9:41 a.m.*)

7                             --o0o--

8         I, Paige M. Christian, a court-appointed transcriber,

9    certify that the foregoing is a correct transcript transcribed

10   from the official electronic sound recording of the proceedings

11   in the above-entitled matter.

12

13   Date:  September 18, 2024

14                        /s/ Paige M. Christian_____
                          Paige M. Christian, RMR, CRR, CCR #955
15                        Official Court Reporter
                          United States District Court
16                        District of Nevada

17

18

19

20

21

22

23

24

25