1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEVADA

3    UNITED STATES OF AMERICA,        )   CASE NO. 2:23-cr-00111-GMN-DJA
                                      )
4              Plaintiff,             )   Las Vegas, Nevada
                                      )   March 11, 2024
5         vs.                         )   Courtroom 7D
                                      )
6    ANTHONY LEWIS HAMELIN,           )   Recording method:  Liberty/ECRO
                                      )   11:04 a.m. - 11:30 a.m.
7              Defendant.             )   CHANGE OF PLEA
     _____     )
8                                         *C E R T I F I E D   C O P Y*

9

10

11              TRANSCRIPT OF PROCEEDINGS

12       BEFORE THE HONORABLE GLORIA M. NAVARRO,
            UNITED STATES DISTRICT COURT JUDGE

13

14
     APPEARANCES:  (See next page)
15

16   Recorded by:  Araceli Bareng

17   Transcribed by:     PAIGE M. CHRISTIAN, RMR, CRR, CCR #955
                         United States District Court
18                       333 Las Vegas Boulevard South
                         Las Vegas, Nevada  89101
19

20

21

22

23

24   Proceedings recorded by electronic sound recording.
     Transcript produced by mechanical stenography and computer.
25

1    **APPEARANCES:**

2

3    For the Government:

4          **JACOB HAILE OPERSKALSKI, AUSA**
           *UNITED STATES ATTORNEY'S OFFICE*
5          501 Las Vegas Boulevard South
           Suite 1100
6          Las Vegas, NV 89101
           (702) 388-6336
7          E-mail: jacob.operskalski@usdoj.gov

8

     For Defendant Anthony Lewis Hamelin:
9
           **JOANNE L. DIAMOND, AFPD**
10         *OFFICE OF THE FEDERAL PUBLIC DEFENDER*
           411 E. Bonneville Avenue
11         Suite 250
           Las Vegas, NV 89101
12         (702) 388-6577
           E-mail: joanne_diamond@fd.org
13
                        *  *  *  *  *  *
14

15

16

17

18

19

20

21

22

23

24

25

1          LAS VEGAS, NEVADA; MARCH 11, 2024; 11:04 A.M.

2                              --o0o--

3                    P R O C E E D I N G S

4          **COURTROOM ADMINISTRATOR:**  This is the time set for

5    the change of plea hearing in Case No. 2:23-cr-00111-GMN-DJA,

6    United States of America vs. Anthony Lewis Hamelin.

7          Counsel, your appearances, please.

8          **MR. OPERSKALSKI:**  Good morning, Your Honor.  Jacob

9    Operskalski for the United States.

10         **THE COURT:**  Good morning, Mr. Operskalski.

11         **MS. DIAMOND:**  Good morning, Your Honor.  Joanne

12   Diamond with the Federal Public Defender's Office with

13   Mr. Hamelin, who is present and in custody.

14         **THE COURT:**  Good morning, Ms. Diamond.

15         Good morning, Mr. Hamelin.

16         **THE DEFENDANT:**  Good morning.

17         **THE COURT:**  All right.  So my understanding is that

18   we're going forward with the change of plea; is that right?

19         **THE DEFENDANT:**  Yes.  Yes, Your Honor.

20         **THE COURT:**  All right.  Let me go ahead and reconnect

21   here.

22         All right.  So, Mr. Hamelin, we're going to go ahead

23   and administer the oath to you first to tell the truth

24   (indiscernible) asking you some questions.

25         **COURTROOM ADMINISTRATOR:**  Please stand and raise your

1    right hand.

2            Do you solemnly swear the testimony you're about to

3    give in the cause now pending before this Court will be the

4    truth, the whole truth, and nothing but the truth, so help you

5    God?

6            **THE DEFENDANT:**  Yes, sir.

7            **COURTROOM ADMINISTRATOR:**  Thank you.  Please be

8    seated.

9            **THE COURT:**  All right.  Just make sure that the

10   microphone is as close to you as it can be.  Also, the neck of it

11   bends.  If you need to bend it towards you, that's okay.

12           All right.  So, do you understand, Mr. Hamelin, that

13   because you've just sworn to tell the truth, that means that your

14   answers to my questions are subject to the penalties of perjury

15   if you do not answer truthfully?

16           **THE DEFENDANT:**  Yes, Your Honor.

17           **THE COURT:**  All right.  And have you been provided

18   with a copy of the charges against you?

19           **THE DEFENDANT:**  Yes.

20           **THE COURT:**  Do you read, write, and understand the

21   English language?

22           **THE DEFENDANT:**  Yes, Your Honor.

23           **THE COURT:**  Do you feel that you understand the

24   charges?

25           **THE DEFENDANT:**  Yes, Your Honor.

1          **THE COURT:**  And, Ms. Diamond, does he waive the

2     formal reading of the entirety of the charges?

3          **MS. DIAMOND:**  Yes, Your Honor.

4          **THE COURT:**  All right.  So, Mr. Hamelin, you have

5     been charged with two counts, and I am required to explain these

6     to you.  Count 1 of the indictment is influencing, impeding, or

7     retaliating against a federal officer by threatening a family

8     member, in violation of Title 18 of the United States Code

9     Section 115(a)(1)(A).  And there are elements that are listed in

10    your plea agreement on page 4, if you'd like to follow along --

11    I'm sorry -- yes.  Starts on line 4.

12          There are two elements to this offense.  The first

13    one is that you threatened to murder a member of the immediate

14    family of a United States official, and the second element is

15    that you did so with the intent to impede, intimidate, interfere

16    with a United States official while he was engaged in the

17    performance of official duties or with the intent to retaliate

18    against a United States official on account of the performance of

19    his official duties.

20          So, do you understand that these two elements are

21    what the government must prove beyond a reasonable doubt before

22    you could be convicted of Count 1?

23          **THE DEFENDANT:**  Yes.

24          **THE COURT:**  All right.  And then, Count 2 in the

25    indictment charges you with transmitting a communication

1  containing a threat to injure, in violation of Title 18 United

2  States Code Section 875 subsection (c).  Again, the elements are

3  on page 4, and again, there are two elements.  The first one is

4  that you knowingly transmitted in interstate commerce a message

5  containing a threat to injure a person, and the second element is

6  that such message was transmitted for the purpose of issues a

7  threat or with knowledge that the message would be viewed as a

8  threat.

9            So, do you understand these two elements are what the

10  government must prove beyond a reasonable doubt before you could

11  be convicted of Count 2?

12            **THE DEFENDANT:**  Yes.

13            **THE COURT:**  Now, before we go -- before we move

14  forward, I need to ask you some personal questions in order to

15  assure myself that you are competent to enter a valid plea.

16            So, if, at any time, you want me to restate the

17  question or you want to pause and speak confidentially,

18  privately, with your attorney, please let us know so that we can

19  make that opportunity available to you.  Okay?

20            **THE DEFENDANT:**  Okay.

21            **THE COURT:**  So, how old are you, sir?

22            **THE DEFENDANT:**  I'm 53.

23            **THE COURT:**  And how far did you go in school?

24            **THE DEFENDANT:**  A master's degree.

25            **THE COURT:**  And which area?

1          **THE DEFENDANT:**  Public administration.

2          **THE COURT:**  Okay.  And have you taken any drugs or

3 any medicine in the last 24 hours?

4          **THE DEFENDANT:**  Just prescriptions.

5          **THE COURT:**  Okay.  How many prescriptions are you

6 taking?

7          **THE DEFENDANT:**  Abilify, topiramate, and lamotrigine.

8          **THE COURT:**  Okay.  Abilify.

9          What was the second one?

10          **THE DEFENDANT:**  Abilify, topiramate, and lamotrigine.

11          **THE COURT:**  Okay.  And what are those for?

12          **THE DEFENDANT:**  They're antipsychotics.

13          **THE COURT:**  All three?

14          **THE DEFENDANT:**  Yes.

15          **THE COURT:**  Okay.  And when did you start taking

16 these?

17          **THE DEFENDANT:**  August of last year.

18          **THE COURT:**  All right.  So, by now, do you feel that

19 you are familiar with any side effects that they might have?

20          **THE DEFENDANT:**  I'm not really familiar with the side

21 effects, but I've been taking them -- I've been taking those

22 medications for years.

23          **THE COURT:**  Okay.

24          **THE DEFENDANT:**  I was -- yes.

25          **THE COURT:**  So, do you feel any dizziness or anxiety,

1  confusion, sleepiness, or any other kind of physical discomfort

2  or --

3           THE DEFENDANT:  No.

4           THE COURT:  -- any -- any problem with keeping

5  focused and understanding what's going on?

6           THE DEFENDANT:  No.  I'm (indiscernible).

7           THE COURT:  Okay.  Is there any other medication that

8  you think you should be taking besides those three medications?

9           THE DEFENDANT:  No.  I'm just -- other than insulin.

10  I'm on insulin.

11           THE COURT:  Okay.  So, the insulin for diabetes, and

12  then the three prescriptions -- medications for the antipsychotic

13  illness since August of 2023?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Okay.  Anything else?

16           THE DEFENDANT:  Trying to think what else I'm on.

17  Those are the main ones that I take at Pahrump.  Yes.

18           THE COURT:  Okay.  And does the prosecution have any

19  concerns or questions about the competency of Mr. Hamelin?

20           MR. OPERSKALSKI:  No, Your Honor.  Thank you.

21           THE COURT:  All right.  And, Ms. Diamond, do you have

22  any concerns about his competency?

23           MS. DIAMOND:  No, Your Honor.

24           THE COURT:  All right.  Based upon counsels'

25  representations and my own observations and the defendant's

1  answers, I do find that he is competent to plead guilty in this

2  matter.

3          First, we'll have the government -- the prosecutor

4  summarize the essential terms of the plea agreement, then I'll

5  ask Ms. Diamond if she has anything to add or dispute.

6          But, most importantly, Mr. Hamelin, please listen

7  carefully to what the prosecutor says.  If you hear him say

8  anything different than what you thought the terms of your plea

9  agreement were, please let us know so we can make sure we're all

10 working off the same version.  Okay?

11          **THE DEFENDANT:**  Okay.

12          **THE COURT:**  Go ahead.

13          **MR. OPERSKALSKI:**  Thank you, Your Honor.

14          On February 28, 2023, defense counsel signed a plea

15 agreement on the defendant's behalf that was submitted with the

16 court.  On today's date, the defendant signed a hard copy of that

17 agreement.

18          In that agreement, the defendant agreed to, first,

19 plead guilty to Counts 1 and 2 of the indictment, which charge

20 him with influencing, impeding, or retaliating against a federal

21 official by threatening a family member, in violation of 18

22 U.S.C. Section 115(a)(1)(A) in Count 1, and transmitting a

23 communication containing a threat to injure, in violation of 18

24 U.S.C. 875 subsection (c) in Count 2.

25          Defendant will not seek to withdraw his plea once it

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - March 11, 2024        10

1    is entered.

2            The defendant agreed to, and will not oppose, the

3    imposition of the following special conditions of supervised

4    release following the imposition of his sentence:

5            Defendant shall not attempt to contact the victims of

6    this case, in any way.  Defendant shall not attend any public

7    events where he has reason to believe the victims will be.

8            The defendant agrees to pay restitution as ordered by

9    the Court.  The plea agreement includes a rough estimate of a

10   thousand dollars, but this estimate could change as more

11   information comes to the attention of the parties and the Court

12   before sentencing.

13           And defense counsel and I have spoken and expect that

14   that number will likely change, but we've included a placeholder

15   in the plea agreement.

16           The defendant is waiving his trial rights and

17   specifically his right to raise any defenses.  His pending motion

18   to suppress will be vacated, and he will no longer be raising the

19   issuance -- the issue of his competence at the time of this

20   offense.

21           Accordingly, his acceptance of responsibility will

22   save a significant amount of government resources.  And provided

23   that the defendant adheres to this plea agreement, the government

24   will be moving for a reduction of points for acceptance of

25   responsibility.

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - March 11, 2024        11

1            The stipulated guideline calculations are on page 9

2   of the plea agreement.

3            The defendant has further agreed that the factual

4   basis that is set forth on pages 7 to 8 of the plea agreement is

5   true, and in exchange, the parties will jointly recommend a

6   sentence of 46 months to the Court.  Thank you.

7            **THE COURT:**  Thank you, Mr. Operskalski.

8            Ms. Diamond, any concerns, questions, or do you agree

9   that that's a correct representation?

10           **MS. DIAMOND:**  That's a correct representation, Your

11  Honor.

12           **THE COURT:**  All right.  And, Mr. Hamelin, did you

13  hear the prosecutor say anything different than what you thought

14  the terms of your agreement were?

15           **THE DEFENDANT:**  No.  Everything is correct.

16           **THE COURT:**  All right.  Are you satisfied with the

17  legal representation your attorney has provided you so far?

18           **THE DEFENDANT:**  Yes, Judge.

19           **THE COURT:**  Have you had sufficient time to discuss

20  your case with her?

21           **THE DEFENDANT:**  Yes, Judge.

22           **THE COURT:**  And has she answered all your questions?

23           **THE DEFENDANT:**  Yes, Judge.

24           **THE COURT:**  Okay.  And for the prosecution, I have

25  one last question.

1              Is -- were there any formal written offers before

2   this one that were either withdrawn or rejected?

3              **MR. OPERSKALSKI:**  There was one more offer that was

4   sent to the defense counsel in this -- in this case.  It was a

5   more favorable plea agreement.  But, Ms. Diamond and I agreed

6   that there was another enhancement, and after further

7   negotiations, we agreed that it does apply.

8              The first plea agreement that was offered was -- did

9   not include that enhancement, and it was a recommendation of the

10  high end of the guidelines that we'd be agreeing to.  This

11  subsequent plea agreement is a recommendation of the low end of

12  the guidelines but including that enhancement.

13             **THE COURT:**  Okay.  So you're saying that the prior

14  plea offer was a miscalculation that the Court wasn't going to be

15  able to follow, anyway, and then there was a second one, but it

16  was not as good as this one?  It recommended a higher

17  sentence --

18             **MR. OPERSKALSKI:**  That is correct, Your Honor.

19             **THE COURT:**  -- lowered; is that right?

20             **MR. OPERSKALSKI:**  Yes, Your Honor.  Thank you.

21             **THE COURT:**  All right.  Ms. Diamond, do you agree?

22             **MS. DIAMOND:**  That's correct, Your Honor.

23             **THE COURT:**  All right.  And, Mr. Hamelin, are you

24  aware of all that?

25             **THE DEFENDANT:**  Yes, Your Honor.

1          **THE COURT:**  So let's talk about your trial rights.

2          Do you understand that you're not required to plead

3    guilty?

4          You do have a right to a trial, and in order to be

5    convicted, all the jurors would have to agree unanimously that

6    you are guilty.

7          Do you understand that?

8          **THE DEFENDANT:**  Yes, Your Honor.

9          **THE COURT:**  And do you understand that at your trial,

10   you would be presumed to be innocent, and the government would

11   have to overcome that presumption and prove you guilty beyond a

12   reasonable doubt; you would never have to prove your innocence?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  And do you understand that during your

15   trial, the witnesses for the government would have to come to

16   court here and testify in your presence, and your attorney would

17   have the opportunity to cross-examine those witnesses and to

18   object to any evidence offered by the government?

19         **THE DEFENDANT:**  Yes, Your Honor.

20         **THE COURT:**  And do you understand that she would also

21   have the right to call witnesses on your behalf and to present

22   evidence to the jury on your behalf?

23         **THE DEFENDANT:**  Yes, Your Honor.

24         **THE COURT:**  And do you understand that you do have

25   the right to testify, but you also would have the right to not

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - March 11, 2024          14

1  testify.  And if you chose to remain silent, I would instruct the

2  jury they could not hold your silence against you?

3          **THE DEFENDANT:**  Yes, Your Honor.

4          **THE COURT:**  So, knowing all this, do you understand

5  that if you waive and give up your right to a jury trial and

6  plead guilty today, then there will be no trial, and I will

7  simply enter a judgment of guilty and sentence you based on

8  today's guilty plea?

9          **THE DEFENDANT:**  Yes, Your Honor.

10          **THE COURT:**  So, is that what you wish to do?  Do you

11  wish to waive and give up your right to a jury trial?

12          **THE DEFENDANT:**  Yes.

13          **THE COURT:**  In addition to your right to a jury

14  trial, you also -- because you are being adjudicated guilty of a

15  felony, you will be adjudicated a felon, and having a felony on

16  your record may deprive you of valuable civil rights such as the

17  right to vote, the right to serve on a jury, the right to possess

18  a firearm, and it is virtually certain that you will be deported

19  if you're not a legal born U.S. citizen.

20          Do you understand that?

21          **THE DEFENDANT:**  Yes.

22          **THE COURT:**  Now, the maximum sentence that I may

23  impose is also in the plea agreement.  It's correctly stated on

24  page 4 that for Count 1, the maximum is ten years of imprisonment

25  with three years of supervision, a fine of up to $250,000 or

1  twice the gross gain or gross loss, and also, there's a mandatory

2  special assessment of $100.

3           As to Count 2, the maximum is five years of

4  imprisonment, three years of supervision, a fine of up $250,000

5  or twice the gross gain or gross loss, and also a mandatory

6  special assessment of $100.

7           So, if those two sentences were to run consecutive as

8  opposed to concurrent -- if they're concurrent, they would both

9  run at the same time, but if they're consecutive, you have to

10  serve one before you start serving the second one.  If they're

11  consecutive, the total maximum would be 15 years of imprisonment,

12  six years of supervision, and a fine of up to $500,000 or twice

13  the gross gain or gross loss resulting from the offense and a

14  mandatory penalty assessment of $200.

15           Are you aware of all that?

16           **THE DEFENDANT:**  Yes, Your Honor.

17           **THE COURT:**  All right.  Let's talk about the

18  guidelines now -- oh, actually, there is also in your case

19  restitution that is mentioned on page 5.  In this case so far,

20  the parties currently believe that the applicable amount of

21  restitution is approximately $1,000 but recognize and agree that

22  this amount could change based on facts, et cetera.

23           Are you aware of that?

24           **THE DEFENDANT:**  Yes.

25           **THE COURT:**  Now, let's talk about the sentencing

1  guidelines.  So the Sentencing Commission has issued guidelines

2  to assist judges like me in determining the appropriate sentence,

3  considering that the statute provides such a large range, you

4  know, anything up to 15 years, right, so the guidelines help us

5  to narrow the range of potential sentences.

6          Has your attorney talked to you about the guidelines

7  and how they might apply to the facts in your particular case?

8          **THE DEFENDANT:**  Yes.

9          **THE COURT:**  And do you feel that your attorney has

10  answered all your questions about the guidelines?

11          **THE DEFENDANT:**  Yes.

12          **THE COURT:**  Do you understand that I will not be able

13  to determine your guideline range until after the probation

14  office has completed its report?

15          **THE DEFENDANT:**  Yes.

16          **THE COURT:**  And do you understand that if the

17  government is agreeing not to prosecute other counts or charges,

18  any -- any of the conduct that is relevant can be used in this

19  case and could increase the sentencing range?

20          **THE DEFENDANT:**  Yes.

21          **THE COURT:**  And do you understand that any

22  recommendation of a sentence agreed to by your attorney and the

23  government's attorney is not binding on the Court?

24          So, for example, in your plea agreement, they're

25  recommending -- I think it's 45 or 46, something in the 40s.

1              Is it 45?

2         **MR. OPERSKALSKI:**  46 months, Your Honor.

3         **THE COURT:**  46.  46 months.

4         I'm not required to follow that recommendation even

5    though they're both recommending that.

6         Do you understand that?

7         **THE DEFENDANT:**  Yes.

8         **THE COURT:**  And do you understand that after your

9    guideline range has been determined, I still have the authority

10   to impose a sentence that is more severe or less severe than what

11   is recommended by the guidelines, the probation office, or the

12   parties?

13        **THE DEFENDANT:**  Yes.

14        **THE COURT:**  My -- my only cap is the statutory cap.

15        Do you understand that?

16        **THE DEFENDANT:**  Yes.

17        **THE COURT:**  All right.  And so, do you understand

18   that if I do impose a sentence that is higher than what you had

19   hoped for, that you are not -- you cannot withdraw your guilty

20   plea on that basis.  You will still be bound by your guilty plea?

21        **THE DEFENDANT:**  Yes.

22        **THE COURT:**  And do you understand that both you and

23   the government have the right to appeal any sentence that I

24   impose, unless you have given up that right in some way in your

25   written plea agreement, which there is a section in your plea

1   agreement on page 13 about waiver of appellate rights.

2              Are you aware of that?

3              **THE DEFENDANT:**  Yes.

4              **THE COURT:**  All right.  Let's talk about supervised

5   release now.

6              We do not have parole in the federal system, so if

7   you are sent to prison, you will not be released early on parole.

8              Do you understand that?

9              **THE DEFENDANT:**  Yes.

10             **THE COURT:**  And do you understand that after a term

11  of imprisonment, the Court could order a term of supervision, and

12  if a term of supervision is ordered, then you need to -- you'll

13  be required to abide by conditions that I'll explain at the time

14  of sentencing, and if you violate any of those conditions, you

15  could be returned to prison?

16             **THE DEFENDANT:**  Yes.

17             **THE COURT:**  And do you understand that if your

18  supervision is revoked for any reason, you could be in prison for

19  the full term of supervision without any credit for time spent

20  successfully on supervision?

21             So, for example, if I was to order three years of

22  supervision, and you do everything you're supposed to do for two

23  years, but somewhere in that third year, you violate a condition

24  of your supervision, I could still revoke your supervision and

25  send you back to prison for three years.

1              Do you understand that?

2              **THE DEFENDANT:**  Yes.

3              **THE COURT:**  All right.  And do you understand that

4    adding the time spent in prison if your supervised release is

5    revoked, adding that to the original sentence will naturally add

6    up to be more than the original sentence?

7              **THE DEFENDANT:**  Yes.

8              **THE COURT:**  All right.  So do you have any questions

9    for me about anything we've discussed so far?

10             **THE DEFENDANT:**  No, Your Honor.

11             **THE COURT:**  Do you have any questions for me or for

12   your attorney about anything else that we didn't talk about but

13   that is a lingering question in your head?

14             **THE DEFENDANT:**  No, no.

15             **THE COURT:**  All right.  So, let me ask you how you

16   wish to plead, guilty or not guilty, to Count 1, which is the

17   influencing, impeding, or retaliating against a federal officer

18   by threatening a family member -- guilty or not guilty?

19             **THE DEFENDANT:**  Guilty.

20             **THE COURT:**  Okay.  And then, Count 2 is transmitting

21   a communication containing a threat to injure.

22             Do you plead guilty or not guilty?

23             **THE DEFENDANT:**  Guilty.

24             **THE COURT:**  And are you pleading guilty because in

25   truth and in fact, you are guilty?

1               **THE DEFENDANT:**  Yes.

2               **THE COURT:**  Has anyone made any threats or any

3     promises to you to force you to plead guilty?

4               **THE DEFENDANT:**  No.

5               **THE COURT:**  Has anyone told you that if you do not

6     plead guilty, some negative action will be taken against you --

7     new charges or any physical threats?

8               **THE DEFENDANT:**  No.

9               **THE COURT:**  And do you understand that while you have

10    the right to remain silent, I am going to ask you to give up that

11    right in a very limited way, just so I can ask you questions

12    about the facts that are on the bottom of page 7 and the top of

13    page 8 of your plea agreement, are you willing to do that?  Are

14    you willing to waive your right to remain silent in this limited

15    way?

16              **THE DEFENDANT:**  Yes.

17              **THE COURT:**  All right.  So, on the bottom of page 7,

18    line 21, it says that in the late evening of June 1st and the

19    early morning of June 2nd, 2023, you made threatening phone

20    calls, and you left a threatening voicemail and text message on

21    the phone of a person by the initial J.M. and that that person

22    with the initials J.M. is the wife of a person with the initials

23    K.M., who was, at the time, a member of the United States House

24    of Representatives.

25              The defendant's threats were directed at C.M., which

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - March 11, 2024          21

 1   is the son of K.M. and J.M., and the following statement was left
 2   in a voicemail (as read):  "I know where you work.  I know who
 3   your coworkers are.  I'm in Las Vegas, and I'm coming your way.
 4   So I told your father I'm coming, and I told your father about
 5   the law of unintended consequences.  And when I posted on this
 6   Facebook page about his -- the budget of him coming back for
 7   more, he's a very arrogant and very foolish man.  And needless to
 8   say, unfortunately, you're the undeserving consequence of his
 9   deserving punishment.  It's nothing personal.  But when you see
10   me, you'll know.  You'll know and you'll know that even though
11   it's my hand, your father killed you."

12           Defendant sent J.M. the text messages stating anger
13   and frustrating with K.M. for carrying out his official duties.
14   The defendant sent the following in a text message (as read):  "I
15   want to look at K in the eye and tell him the hard truth.  He
16   killed.  He did.  Karma and the law of unintended consequences
17   came home to roost.  I want to see the pain when he hears the
18   truth in open court."

19           And it says that you admitted that you intended to
20   communicate a threat and that the purpose of your threats were to
21   impede, intimidate, and interfere with K.M. while he was engaged
22   in the performance of official duties and with the intent to
23   retaliate against K.M. on account of the performance of his
24   official duties.

25           Is that all truthfully correct?

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - March 11, 2024      22

1          **THE DEFENDANT:**  Yes, Your Honor.

2          **THE COURT:**  All right.  Is there any other questions

3   that the government would like me to ask?

4          **MR. OPERSKALSKI:**  Your Honor, perhaps I missed it,

5   but just one small point that the defendant admits that he sent

6   all these messages from Las Vegas, Nevada, to California, and

7   therefore, that they were transmitted in interstate commerce.

8          **THE COURT:**  That is a good point.

9          **MR. OPERSKALSKI:**  Thank you.

10         **THE COURT:**  So, do you agree to that, sir, that the

11  messages that you sent were sent when you were in Las Vegas, but

12  they were sent to someone who was in California?

13         **THE DEFENDANT:**  Yes.

14         **THE COURT:**  All right.  So that would be transmitted

15  in interstate commerce.

16         All right.  So, since you do acknowledge that you

17  are, in fact, guilty and aware of your right to a trial and what

18  the maximum punishment is, I do accept your plea of guilty, and

19  it's the finding of this Court in the case of United States vs.

20  Anthony Lewis Hamelin, you're fully competent and capable of

21  entering an informed plea, knowing and voluntarily, and it does

22  contain the essential elements of the offense charged supported

23  by an independent basis of fact.

24         And I'm now ordering a presentence investigation

25  report.  I do urge your full compliance and cooperation with the

TRANSCRIBED FROM DIGITAL RECORDING
2:23-cr-00111-GMN-DJA - March 11, 2024          23

1  probation office in providing them information.  Your attorney,

2  Ms. Diamond, will help you with that process.

3          Once they complete what I call the rough draft, the

4  initial draft, of that report, please look at it carefully, and

5  let your attorney know right away if you see any mistakes, typos,

6  changes, things taken out of context so that she can provide

7  objections.  She does have a deadline to do that.

8          Once the deadlines are reviewed and changes are made,

9  then there's a final presentence report.  And that's the only

10  version that I see is the final.  But you should look at the

11  final, as well, and if there's any lingering mistakes or

12  something you didn't see the first time, any information that you

13  want to be changed, make sure you let Ms. Diamond know.

14          She can provide a sentencing memorandum in writing

15  which is due five business days before sentencing.  If the

16  government would like to respond in writing, that's due three

17  business days before sentencing.

18          And the reason why I talk so much about these

19  presentence reports is because it can be used not only for

20  sentencing, but it can be used by other federal agencies.  So,

21  for example, Homeland Security can use it.  The IRS can use it.

22  The Bureau of Prisons can use it to determine which of all the

23  facilities in the United States you'll be designated to serve

24  your time.  The Bureau of Prisons can also use this presentence

25  report to determine who your roommates can or cannot be, what

 1  programs you're eligible for.  The programming is important

 2  because different programs provide different amounts of credit

 3  for time served, so you want to have as many options as possible

 4  if you can.  And I'm told that once this document leaves our

 5  hands, it's very difficult and sometimes impossible to change, so

 6  please take a look at that presentence report very carefully.

 7          Do we have a sentencing date, Nick?

 8          **COURTROOM ADMINISTRATOR:**  Yes, Your Honor.  June

 9  10th, 2024, at 10 a.m.

10          **THE COURT:**  All right.  So 10 a.m. on June 10th, are

11  you available, Mr. Operskalski?

12          **MR. OPERSKALSKI:**  Yes, Your Honor.  Thank you.

13          **THE COURT:**  And, Ms. Diamond, does that work for you,

14  June 10th at 10 a.m. --

15          **MS. DIAMOND:**  It does, Your Honor.

16          **THE COURT:**  All right.  So, Mr. Hamelin, that will be

17  the date and time of your sentencing, June 10th at 10 a.m.  If it

18  changes for any reason, your attorney will let you know.

19          You do have the right to speak at your sentencing if

20  you'd like to.  You're not required to, but if you would like to,

21  you do have the right to do that.  Some people prefer to read a

22  letter or write a letter, and that's acceptable, as well.

23          If you have friends or family who would like to

24  submit a letter on your behalf, please make sure those are sent

25  to Ms. Diamond first because she does have the Court's authority

1  to redact any private privileged information that shouldn't be

2  made public.  All these letters are made public, and she can

3  redact, especially phone numbers and addresses.  We don't want

4  people harassed just because they were nice enough to write a

5  letter on your behalf.

6            And is there a preliminary order of forfeiture in

7  this case?

8            **MR. OPERSKALSKI:**  There is not, Your Honor.

9            **THE COURT:**  All right.  But there will be a

10 restitution list provided, so the parties are hereby on notice

11 that if the restitution list is not received by the courtroom

12 deputy at least one day before sentencing, the sentencing hearing

13 may be continued because we need to have that for the sentencing.

14           Are there any other requests by the government for

15 any additional issues I need to address before we recess?

16           **MR. OPERSKALSKI:**  There's not, Your Honor.  Just for

17 purposes of -- of the record, though --

18           **THE COURT:**  Oh, there is.  There's a motion pending,

19 right?  There was Pending Motion No. 21 to suppress?

20           Yes.  There's a pending motion to suppress at No. 21.

21 So maybe I should ask Ms. Diamond.

22           Is that withdrawn, or should that be denied as moot?

23           **MS. DIAMOND:**  Denied as moot preferably, Your Honor.

24           **THE COURT:**  All right.  So Motion No. 21 is denied as

25 moot.

1              Sorry to interrupt you, Mr. Operskalski.

2              Was there anything else that I need to address?

3              **MR. OPERSKALSKI:**  Just briefly, Your Honor.  For

4  purposes of the record, the government has been in communication

5  with the victims in this case, and through their attorney,

6  they've indicated that they did not feel it necessary to be heard

7  at today's hearing.

8              **THE COURT:**  Okay.

9              **MR. OPERSKALSKI:**  Thank you.

10             **THE COURT:**  Thank you.  Anything else, Ms. Diamond,

11  you need me to address before we recess?

12             **MS. DIAMOND:**  No, Your Honor.  Thank you.

13             **THE COURT:**  All right.  Mr. Hamelin, we will see you

14  back here for sentencing June 10th at 10 a.m., unless the parties

15  change that date.  Sometimes they need more time and they change.

16  They ask for the date to be continued, and she will be --

17             **THE DEFENDANT:**  Thank you.

18             **THE COURT:**  -- able to let you know.

19             Oh, Ms. Diamond, there was something about a psych

20  eval on the record.

21             Is that still requested, or is that --

22             **MS. DIAMOND:**  Your Honor, that was the government's

23  motion for an evaluation --

24             **THE COURT:**  Oh, sorry --

25             **MS. DIAMOND:**  -- and we had deferred -- we filed a

1  motion -- a stipulation delaying that evaluation pending

2  Mr. Hamelin's change of plea.  We don't need it, but I don't know

3  if it's better to just leave that pending until after sentencing,

4  just out of an abundance of caution --

5           **THE COURT:**  Okay.

6           **MS. DIAMOND:**  -- just in case anything goes ary

7  between now and then.  I don't expect it to, Mr. Hamelin, but

8  it's easier to do that than to restart the whole clock just in

9  case.

10          **THE COURT:**  All right.  Do you agree to that?

11          **MR. OPERSKALSKI:**  I would agree with that, Your

12  Honor.  Thank you.

13          **THE COURT:**  All right.  So that one will remain

14  pending.

15          But you don't want me to actually do anything on

16  it --

17          **MS. DIAMOND:**  Don't do anything yet, Your Honor --

18          **THE COURT:**  -- stay.

19          **MS. DIAMOND:**  -- and at sentencing, we'll ask the

20  Court to deny it as moot.

21          **THE COURT:**  Okay.  So we'll just leave it stayed

22  pending the sentencing, and then we'll address it then.

23          All right.  Thank you.

24          **MR. OPERSKALSKI:**  Thank you, Your Honor.

25               (*Proceedings adjourned at 11:30 a.m.*)

1                        --o0o--

2        I, Paige M. Christian, a court-appointed transcriber,

3   certify that the foregoing is a correct transcript transcribed

4   from the official electronic sound recording of the proceedings

5   in the above-entitled matter.

6

7   Date:  September 16, 2024

8                        /s/ Paige M. Christian_____
                         Paige M. Christian, RMR, CRR, CCR #955
9                        Official Court Reporter
                         United States District Court
10                       District of Nevada

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25