```
 1                IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF NEVADA

 3   UNITED STATES OF AMERICA,    )  CASE NO. 2:23-mj-0475-NJK
                                  )
 4              Plaintiff,        )  Las Vegas, Nevada
                                  )  June 5, 2023
 5        vs.                     )  Courtroom 3B
                                  )
 6   ANTHONY LEWIS HAMELIN,       )  Recording method: Liberty/CRD
                                  )  3:24 p.m. - 3:33 p.m.
 7              Defendant.        )  INITIAL APPEARANCE
     _____ )
 8                                     C E R T I F I E D   C O P Y

 9

10

11                     TRANSCRIPT OF PROCEEDINGS

12           BEFORE THE HONORABLE BRENDA N. WEKSLER
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
13

14
     APPEARANCES:  (See next page)
15

16   Recorded by:  J. Miller

17   Transcribed by:    PAIGE M. CHRISTIAN, RMR, CRR, CCR #955
                        United States District Court
18                      333 Las Vegas Boulevard South
                        Las Vegas, Nevada  89101
19

20

21

22

23

24   Proceedings recorded by electronic sound recording.
     Transcript produced by mechanical stenography and computer.
25
```

1  **APPEARANCES:**

2

3  For the Government:

4      **STEVEN J. ROSE, AUSA**
       *UNITED STATES ATTORNEY'S OFFICE*
5      501 Las Vegas Boulevard South
       Suite 1100
6      Las Vegas, NV 89101
       (702) 388-6206
7      E-mail: steven_rose@usdoj.gov

8
   For Defendant Anthony Lewis Hamelin:
9
       **BRIAN D. PUGH, AFPD**
10     *OFFICE OF THE FEDERAL PUBLIC DEFENDER*
       411 E. Bonneville Avenue
11     Suite 250
       Las Vegas, NV 89101
12     (702) 388-6577
       E-mail: brian_pugh@fd.org
13

14

15

16  ALSO PRESENT:  Vanessa Montes, PTS

17                     * * * * * *

18

19

20

21

22

23

24

25

1                LAS VEGAS, NEVADA; JUNE 6, 2023; 3:24 P.M.

2                                --o0o--

3                          P R O C E E D I N G S

4           **COURTROOM ADMINISTRATOR:** Your Honor, we are now

5    calling United States of America vs. Anthony Lewis Hamelin. The

6    case number is 2:23-mj-0475-NJK.

7           Beginning with government counsel, will counsel

8    please state your names for the record.

9           **MR. ROSE:** Good afternoon, Your Honor. Steven Rose

10   for the government. I'm standing in today on behalf of Jake

11   Operskalski.

12          **THE COURT:** Good afternoon, Mr. Rose.

13          **MR. PUGH:** Brian Pugh on behalf of Mr. Hamelin, who's

14   present and in custody.

15          **THE COURT:** Good afternoon to both of you.

16          All right. Sir, before we go forward, could you

17   please state your full name for the record.

18          **THE DEFENDANT:** Anthony Lewis Hamelin, L-E-W-I-S --

19          **THE COURT:** Thank you, sir.

20          **THE DEFENDANT:** -- H-A-M-E-L-I-N.

21          **THE COURT:** Thank you.

22          How old are you, sir?

23          **THE DEFENDANT:** 51.

24          **THE COURT:** And how far have you gone in school?

25          **THE DEFENDANT:** About a mile and a half.

1          **THE COURT:**  I'm sorry?

2          **THE DEFENDANT:**  That was a joke.  I said a mile and a

3    half.

4          **THE COURT:**  Okay.

5          **THE DEFENDANT:**  I have a master's degree in public

6    administration.

7          **THE COURT:**  All right.  Very well.

8          The complaint in this case charges you with

9    influencing, impeding, or retaliating against a federal official

10   by threatening a family member.  This is a violation of Title 18

11   United States Code Section 115 subsection (a)(1)(A).

12         Did you receive a copy of the complaint?

13         **THE DEFENDANT:**  Yes, ma'am.

14         **THE COURT:**  Do you understand what it is you're being

15   accused of?

16         **THE DEFENDANT:**  Yes, ma'am, I do.

17         **THE COURT:**  You have the right to assistance of

18   counsel at all stages of these proceedings, and if you cannot

19   hire counsel, one will be appointed to you at the public's

20   expense.

21         Can you afford to hire counsel at this time?

22         **THE DEFENDANT:**  No, ma'am.

23         **THE COURT:**  Did you go over some questions regarding

24   your finances with Mr. Pugh prior to court?

25         **THE DEFENDANT:**  Yes.

1          **THE COURT:** Did you understand that when you were
2    providing answers to Mr. Pugh, you were doing so under penalty of
3    perjury?
4          **THE DEFENDANT:** Yes.
5          **THE COURT:** And did you provide truthful information
6    to him?
7          **THE DEFENDANT:** Yes.
8          **THE COURT:** I've reviewed the financial affidavit
9    form.  I find that you qualify for the appointment of counsel and
10   will appoint the Office of the Federal Public Defender to
11   represent you.
12         Sir, you're not required to make any statements about
13   the charges, either here in court or to any law enforcement
14   officer.  Anything you say can be used against you.
15         Do you understand these rights?
16         **THE DEFENDANT:** Yes.
17         **THE COURT:** You also have the right to a preliminary
18   hearing at which the government will be required to show that
19   there is probable cause to believe that you committed the crime
20   charged.
21         This provision may or may not apply to you.  If
22   you're not a United States citizen, you have the right to request
23   that an attorney for the government notify the counselor office
24   of your country of nationality.
25         Under Criminal Rule 5(f), the government is ordered

1  to comply with its disclosure obligations under *Brady v. Maryland*
2  and related cases.  Failure to do so may result in sanctions.
3              Sir, do you understand the purpose of this hearing?
4              **THE DEFENDANT:**  Yes.  The purpose of the hearing is
5  to set a hearing.
6              **THE COURT:**  Very well.  Mr. Pugh, do you have any
7  reason to question the competence of the defendant to understand
8  the charges against him and to assist in his defense?
9              **MR. PUGH:**  I do not.
10             **THE COURT:**  Thank you very much.
11             As to the detention hearing, Mr. Rose, is the
12 government moving for detention?
13             **MR. ROSE:**  Your Honor, I'm asking for detention under
14 18 U.S.C. Section 3142(f)(2)(A) and (B) and are ready to proceed.
15             **THE COURT:**  Give me the section one more time,
16 please.
17             **MR. ROSE:**  3142(f)(2)(A) and (B).
18             **THE COURT:**  All right.  Very well.
19             Mr. Pugh, are you ready to proceed?
20             **MR. PUGH:**  We are, Your Honor.  For the Court's
21 information, Mr. Hamelin is waiving his right to argue for his
22 release and is submitting.
23             **THE COURT:**  All right.  Very well.
24             Still need you, Mr. Rose, to go ahead and make a
25 record.

1               **MR. ROSE:**  Yes, Your Honor.  Thank you.

2               (Indiscernible) first at the -- argue both under the

3   risk of flight and the risk of safety to the community.  In

4   looking both at the nature of the underlying offense, obviously,

5   it is (indiscernible) concern given the specific allegations that

6   are made -- this specific threat that was made to the family

7   member.

8               In addition to that, Your Honor, if you look at the

9   defendant's prior criminal history, although it is

10  (indiscernible) offense, the defendant does have a prior

11  conviction for a very similar offense, that being a conviction in

12  approximately 1994 for threats against the President after

13  sending threats through the mail against the President.  This

14  resulted in a 30 to 30-month -- -7-month sentence.

15              (Indiscernible) that was enough to stop the defendant

16  from -- from sending the threat that he did in this particular

17  case, it's also of note to the government that in the prior case,

18  the threats there not only were they threats against the

19  President, but the defendant made statements to the effect that

20  he wanted to be known as someone who had assassinated the

21  President.

22              Then, you turn to the case at hand, and not only

23  did -- does the government have evidence of the threats in the

24  form of text messages and the voicemail, but it's my

25  understanding that later on, the defendant was interviewed.  And

1  after he was read his rights, he gave a statement to the agents
2  investigating the case wherein he acknowledged making a number of
3  these statements and indeed was giving a rationale for it wherein
4  it sounded almost as if the defendant was proud of the statements
5  that he made.  This was, in his mind, a good plan.
6          He's also very clear in what he said.  This was not
7  something where he said, Oh, I don't like this person.  I'm going
8  to harm them.  He gave a very specific plan as to what he was
9  going to do, even identifying a specific weapon that he wished to
10 use.
11         In addition to all of that, Your Honor, you have
12 (indiscernible) other side of the (indiscernible), the other
13 factors for the Court to consider.  But unfortunately, the
14 defendant here declines to interview with Pretrial, so the Court
15 doesn't have a way to evaluate his employment, his financial
16 resources, and length of residence in the community, a history of
17 (indiscernible).  His declination to interview with Pretrial has
18 also deprived the Court of the ability to assess his family ties.
19 The Court can't consider or look at, you know, for example, a
20 third-party custodian.
21         So, for all of the reasons, I believe the -- I'm
22 sorry, the government has met its burden both (indiscernible)
23 preponderance of the evidence, because it does appear, at least
24 on facts known to the government, that the defendant has less
25 than stable housing, has already articulated a desire to go from

```
 1  Nevada to another state.  I believe the government has shown the
 2  preponderance of the evidence for the risk of flight and the
 3  clear and convincing evidence for the risk of danger to the
 4  community.
 5              With that, I'll submit.
 6              THE COURT:  All right.  I've reviewed the charging
 7  documents, the Pretrial Services report, and heard arguments from
 8  counsel.  I find here that the government has met its burden to
 9  show by a preponderance of the evidence that no condition or
10  combination of conditions will reasonably assure the appearance
11  of such person as required, and the safety of any other person
12  and the community.
13              I also find that the government has met its burden by
14  clear and convincing evidence that no condition or combination of
15  conditions will reasonably assure the safety of any other person
16  and the community.
17              For those reasons, Mr. Hamelin will be detained
18  pending his preliminary hearing in this case.  The rationale for
19  my decision is as follows:  He has not interviewed with Pretrial
20  Services.  As a result, I have no information regarding his
21  history, his residence, or family ties.  I don't have any
22  information regarding his employment history and very little
23  information about his financial resources.  I don't have any
24  information regarding his health.
25              With regards to his prior criminal record, while all
```

1  of the convictions are rather stale, I don't -- I do note a
2  pattern, as the government has noted, with regard to the threats
3  against individuals who hold office such as the one contained in
4  the complaint.  The priors here have to do with threats against
5  the President.
6          I rely on the proffer that the government provided
7  regarding the nature of the current offense, and for that reason
8  and the prior conviction that I just mentioned, I find that no
9  conditions can be fashioned in this case.
10         Do we need any other dates, Mr. Miller?
11         **COURTROOM ADMINISTRATOR:**  Yes, Your Honor.  For the
12 record, the preliminary hearing date in the matter will be
13 scheduled for Monday, the June 19th, 2023, at four o'clock p.m.,
14 in Courtroom 3C before the honorable Judge Koppe.
15         **THE COURT:**  All right.  Mr. Pugh, I see that your
16 client wants to say something --
17         **THE DEFENDANT:**  I just have one question, Your Honor.
18         **THE COURT:**  Talk to -- talk to your attorney first.
19         **THE DEFENDANT:**  Yes.  If -- if these people are so
20 important that they need federal protection, why are they not
21 (indiscernible)?
22         They need to be named.  Name them if they're so
23 important they need to be federally protected.  You -- you don't
24 even miss --
25         **THE COURT:**  Okay.  It doesn't sound to me like you

1  have a question.  You have more of a complaint.

2          Mr. -- Mr. Rose, do you have anything further in this

3  case?

4          **MR. ROSE:**  No, Your Honor.  Thank you.

5          **THE COURT:**  Mr. Pugh, do you have anything further?

6          **MR. PUGH:**  No, Your Honor.  Thank you --

7          **THE COURT:**  All right.  Very well.  Thank you.

8          **COURTROOM ADMINISTRATOR:**  All rise.

9              (*Proceedings adjourned at 3:33 p.m.*)

10                          --o0o--

11      I, Paige M. Christian, a court-appointed transcriber,

12 certify that the foregoing is a correct transcript transcribed

13 from the official electronic sound recording of the proceedings

14 in the above-entitled matter.

15

16 Date:  September 16, 2024

17                    /s/ Paige M. Christian_____
                      Paige M. Christian, RMR, CRR, CCR #955
18                    Official Court Reporter
                      United States District Court
19                    District of Nevada